# EXHIBIT 3

Matthew S. Oorbeek, Esq. – NJ Attorney ID No. 073242013
THE WOLF LAW FIRM, LLC
1520 U.S. Highway 130 - Suite 101
North Brunswick, NJ  08902
(732) 545-7900 – TELEPHONE
(732) 545-1030 – FAX

Edwyn D. Macelus, Esq. – NJ Attorney ID No. 039342013
THE LAW OFFICE OF EDWYN D. MACELUS
PO Box 374
Edgewater, NJ  07020
(845) 728-6307 – TELEPHONE
(201) 313-2609 – FAX
*Attorneys for Plaintiff, Sean Kiley,*
*on behalf of himself and others similarly situated*

|  |  |
|---|---|
| SEAN KILEY, on behalf of himself and others similarly situated, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION – UNION COUNTY |
| Plaintiff(s), | DOCKET NO. UNN-L-____-18 |
| vs. | CIVIL ACTION |
| TUMINOS'S TOWING, INC., JOHN TUMINO, and JOHN DOES (1-5), | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| Defendants. | |

    **PLAINTIFF, SEAN KILEY**, on behalf of himself and all others similarly situated, by way of Complaint says:

### NATURE OF CASE

1.    Plaintiff brings this action on behalf of himself and those similarly situated against Defendants, a towing company and its principal, for unlawful and predatory towing practices.

2.    New Jersey enacted the Predatory Towing Prevention Act ("PTPA"), N.J.S.A. 56:13-7 *et seq.* and implemented the Predatory Towing Prevention Act Regulations ("PTPA Regulations"), N.J.A.C. 13:45A-31.1 to -31.10, to protect consumers from "unscrupulous towers" like Defendants that charge "unwarranted and excessive fees...under circumstances where the consumer has no meaningful opportunity to withhold consent." N.J.S.A. 56:13-8.

3.     Plaintiff brings claims on behalf of himself and those similarly situated under the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 *et seq.* and the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14 *et seq.* based on violation of the PTPA and PTPA Regulations, seeking, *inter alia,* treble damages, statutory damages, and injunctive remedies against Defendants to cease the unlawful practices.

4.     As described more fully below, Defendants violated New Jersey law in connection with their business of non-consensual towing motor vehicles not involved in accidents by (1) charging an unlawful Administrative Fee; (2) charging an unlawful fee for "Labor"; (3) charging an unlawful fee for "Storage"; and (4) identifying the date that the vehicles were towed but failing to identify the time that the vehicles were towed to Defendants' storage facility.

## PARTIES

5.     Plaintiff Sean Kiley (the "Plaintiff") resides in Ridgefield Park, New Jersey.

6.     Defendant Tumino's Towing, Inc., ("Tumino's Towing") is a New Jersey corporation, with a main business address of 37 Emerson Street, Ridgefield Park, New Jersey and is engaged in the business of towing and storing vehicles in the State of New Jersey.

7.     Defendant Tumino's Towing also has other New Jersey business locations in which it operates out of in Elizabeth, Perth Amboy, Westampton, Bayonne, and in Teaneck.

8.     Defendant John Tumino is the Owner and CEO of Tumino's Towing.

9.     Defendant John Tumino started Tumino's Towing and was responsible for expanding Tumino's Towing. Attached as **Exhibit A** is a true and exact copy of Tumino's Towing "About" section of their website.

10.    John Tumino sets the policies, procedures and practices for Tumino's Towing.

11.    John Tumino sets the policies, procedures and practice that are complained of herein.

12.     Defendants JOHN DOES (1-5) are fictitiously named individuals who, as officers, owners, directors, supervisors, managers, employees, agents and/or representatives of Tumino's Towing, either individually or jointly, set the policies, procedures and practices for Tumino's Towing that are complained of herein.

## VENUE

13.     Venue is proper in Union County, pursuant to R. 4:3-2, because it is the county in which Defendants conduct business.

## FACTUAL ALLEGATIONS

14.     Defendants Tumino's Towing and John Tumino (hereinafter collectively "Defendants") are tow truck operators who engage in non-consensual towing.

15.     Defendant John Tumino maintains Tumino's Towing business philosophy for both the business and each employee.

16.     Tumino sets the policies and practices of Tumino's Towing complained of herein.

17.     The Ridgefield Park Municipal Code ("the Code") at Chapter 362 sets forth regulations for the limits on the fees and services tow operators may charge for providing towing, road services and the storage of vehicles in the Village of Ridgefield Park, including, but not limited to, the towing of vehicles that are abandoned, disabled, illegally parked or stolen, involved in accidents and/or suspected or identified by the borough as being involved in criminal activities.  A copy of the Code, at § 362, is attached hereto as **Exhibit B**.

18.     The Code at § 362-12 Towing and storage fee schedule, sets forth in relevant part:

   A.

   (1)     The following is the fee schedule for towing services:

| Towing Distance | Fee |
| --- | --- |
| Within the Village | $100 |

19.    The Code at § 362-12 <u>Towing and storage fee schedule,</u> further sets forth in relevant part:

      A.

          (2)    The following is the fee schedule for storage services:

| Type | Fee |
| --- | --- |
| Inside storage | $35 per day |
| Outside storage | $25 per day |

20.    On or about February 15, 2014, Plaintiff was the registered owner of a 2010 Honda Accord (hereinafter referenced as "the Honda").

21.    On or about February 15, 2014, Plaintiff's Honda was parked on a public street at the intersection of Christie Street and Teaneck Road in the Village of Ridgefield Park, New Jersey.

22.    On the public street named Christie Street, was a posted sign, (a true and exact copy of which is attached hereto as **Exhibit C**) that set forth in relevant part:

NO
PARKING
WHEN ROAD
IS SNOW COVERED
TOW-AWAY-ZONE

23.    Plaintiff was issued Ticket No.: RP 179415 indicating that he was in violation of the Code at § 197-25 Designation of Snow Emergency No-Parking Areas.  A copy of the Summons is attached hereto as **Exhibit D**.

24.    The Honda was non-consensually towed by Defendants from Christie Street in the Village of Ridgefield Park on February 15, 2017.

25.    The Honda was towed at the request of Ridgefield Park law enforcement.

26.    Defendants did not tow Plaintiff's vehicle as a result of it being in an accident.

27.    Defendants transported the Honda to Tumino's Towing storage facility, located at 37 Emerson Street, Ridgefield Park, New Jersey 07660.

28.     Upon information and belief, the Honda was stored in an outdoor storage lot.

29.     On February 15, 2014, Plaintiff called the Ridgefield Park Police when he realized the Honda was no longer where he previously parked it.

30.     Plaintiff was advised by the Ridgefield Park Police that Defendants towed the Honda.

31.     Plaintiff called a taxi to take him to Ridgefield Park Police Headquarters.

32.     Plaintiff was required to pay a fine of $52.00 at the Ridgefield Park Police Headquarters to release the Honda.

33.     After paying the fine and obtaining a release for the Honda from the Ridgefield Park Police on February 15, 2014, Plaintiff called Defendants to find out how much it would cost to get his car back.

34.     Plaintiff then traveled to Defendants storage lot in Ridgefield Park to get his vehicle back.

35.     Upon arriving at Defendants' storage lot, Plaintiff was provided with an invoice for the charges related to the towing and the services allegedly performed.  A copy of the Release Invoice #320883 is attached hereto as **Exhibit E**.

36.     Release Invoice #320883 sets forth in relevant part:

      a.  the Date-of-Service was 15-Feb-2014.

      b.  Plaintiff was charged a $35.00 fee for "ADMINISTRATION FEE."

      c.  Plaintiff was charged a $100.00 fee for "IMPOUND."

      d.  Plaintiff was charged a $100.00 fee for "Labor."

      e.  Plaintiff was charged a $25.00 fee for "Storage (1 Day)."

37.     On February 15, 2014, Plaintiff paid $268.75 with his credit card upon being presented with an invoice for the charges related to the towing or the services performed.

38.     As a result of Defendants' unlawful acts, including unconscionable commercial practices

and/or deceptive conduct, Plaintiff has suffered ascertainable losses in the amount of:

    a.  $35.00, the fee for ADMINISTRATION FEE;

    b.  $100.00, the fee for Labor;

    c.  $25.00, the fee for Storage (1 Day).

39. As a result of Defendants' unlawful acts, the members of the putative class have suffered ascertainable losses in the amount that they were charged and paid all fees titled "Administration Fee", "Labor" and/or "Storage".

## **CLASS ALLEGATIONS**

40.    This action is brought and may properly proceed as a class action, pursuant to the provisions of <u>Rule</u> 4:32 of the New Jersey Court Rules.  Plaintiff brings this action on behalf of himself and all others similarly situated.  Plaintiff seeks certifications of a Class initially defined as follows:

> Each person whose motor vehicle is registered in his or her name and whose vehicle was non-consensually towed by Defendants from a location in New Jersey, not as a result of an accident, and who, any time on or after the day six (6) years prior to the date this Complaint was filed, were provided a written towing invoice the same or similar to that used in the transaction with Plaintiff.

41.    The term "same or similar" as it relates to the written towing invoice means:

    a.  A written towing invoice that contains a charge for and ADMINISTRATION FEE;

    b.  A written towing invoice that contains a charge for Labor; and/or

    c.  A written towing invoice that contains a fee for Storage.

42.    The Class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

43.    There are questions of law and fact common to the members of the Class that predominate over questions affecting only individuals. These common questions include but are not limited to:

a.  Whether Defendants, by charging an "ADMINISTRATION FEE" when a vehicle was towed not as a result of an accident to Plaintiff and all others similarly situated, have violated the PTPA, at <u>N.J.S.A.</u> 56:13-14(a);

b.  Whether Defendants, by charging an "ADMINISTRATION FEE" when a vehicle was towed not as a result of an accident to Plaintiff and all others similarly situated, have violated the PTPA at <u>N.J.S.A.</u> 56:13-16(f)(1);

c.  Whether Defendants, by charging an "ADMINISTRATION FEE" when a vehicle was towed not as a result of an accident to Plaintiff and all others similarly situated, have violated the PTPA Regulations at <u>N.J.A.C.</u> 13:45A-31.4(a);

d.  Whether Defendants, by charging an "ADMINISTRATION FEE" when a vehicle was towed not as a result of an accident to Plaintiff and all others similarly situated, have violated the PTPA Regulations, at <u>N.J.A.C.</u> 13:45A-31.4(e);

e.  Whether Defendants, by charging a fee for Labor when a vehicle was towed not as a result of an accident and when a fee for Labor is not set forth in the PTPA Regulations, at <u>N.J.A.C.</u> 13:45A-31.4(a)(1) to Plaintiff and all others similarly situated, have violated the PTPA, at <u>N.J.S.A.</u> 56:13-14(a);

f.  Whether Defendants, by charging a fee for Labor when a vehicle was towed not as a result of an accident and when a fee for Labor is not set forth in the PTPA Regulations, at <u>N.J.A.C.</u> 13:45A-31.4(a)(1), to Plaintiff and all others similarly situated, have violated the PTPA at <u>N.J.S.A.</u> 56:13-16(f)(1);

g.  Whether Defendants, by charging a fee for Labor not set forth in the PTPA Regulations, to Plaintiff and all others similarly situated, have violated the PTPA Regulations, at <u>N.J.A.C.</u> 13:45A-31.4(e);

h.  Whether Defendants, by charging a fee for Storage when a vehicle was towed not as a result of an accident, where a fee for Storage is not set forth in the PTPA Regulations, at <u>N.J.A.C.</u> 13:45A-31.4(a)(1), to Plaintiff and all others similarly situated, have violated the PTPA, at <u>N.J.S.A.</u> 56:13-14(a);

i.  Whether Defendants, by charging a fee for Storage when a vehicle was towed not as a result of an accident, where a fee for Storage is not set forth in the PTPA Regulations, at <u>N.J.A.C.</u> 13:45A-31.4(a)(1), to Plaintiff and all others similarly situated, have violated the PTPA at <u>N.J.S.A.</u> 56:13-16(f)(1);

j.  Whether Defendants, by charging a fee for Storage when a vehicle was towed not as a result of an accident to Plaintiff and all others similarly situated, have violated the PTPA Regulations at <u>N.J.A.C.</u> 13:45A-31.4(a);

k.  Whether Defendants, by charging a fee for Storage when a vehicle was towed not as a result of an accident to Plaintiff and all others similarly situated, have violated the PTPA Regulations, at N.J.A.C. 13:45A-31.4(e);

l.  Whether any of the aforementioned violations of PTPA or PTPA Regulations are also violations of the CFA at N.J.S.A. 56:8-2;

m.  Whether the amount that Plaintiff and those similarly situated paid towards an Administration Fee is an ascertainable loss under the CFA at N.J.S.A. 56:8-19;

n.  Whether the amount that Plaintiff and those similarly situated paid towards a Labor fee is an ascertainable loss under the CFA at N.J.S.A. 56:8-19;

o.  Whether the amount that Plaintiff and those similarly situated paid towards Storage fees is an ascertainable loss under the CFA at N.J.S.A. 56:8-19;

p.  Whether the document used in the transaction with Plaintiff and all others similarly situated is a contract and/or notice as contemplated by the TCCWNA at N.J.S.A. 56:12-14 *et seq.*;

q.  Whether Defendants, by providing a receipt for towing services that provide the date the vehicle was non-consensually towed without including the time at which a towed motor vehicle was delivered to a towing company's storage facility, violates the PTPA Regulations at N.J.A.C. 13:45A-31.4(i); and

r.  Whether any or all of the aforementioned violations of the PTPA, the PTPA Regulations and the CFA in the document provided to Plaintiff and all others similarly situated are violations of the TCCWNA at N.J.S.A. 56:12-14 *et seq.*

44.  Plaintiff's claims are typical of the claims of the members of the Class which he represents because all such claims arise out of the same policies, practices, and conduct, and the same or similar documents used by Defendants in their dealings with Plaintiff.

45.  Plaintiff has no interests antagonistic to those of the Class.

46.  The Class, of which Plaintiff is a member, is readily identifiable through Defendants' business records.

47.  Plaintiff will fairly and adequately protect the interests of the Class, and has retained competent counsel experienced in the prosecution of consumer litigation. Plaintiff's attorneys have been certified by the New Jersey Superior Court as class counsel in dozens of consumer cases.

48.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  While the economic damages suffered by the individual members of the Class are significant, the amount is modest compared to the expense and burden of individual litigation.

49.     The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members.

50.     The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action, or the prosecution of separate actions by individual members of the Class would create the risk that adjudications with respect to individual members of the Class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

51.     Defendants have acted, or refused to act, on grounds generally applicable to Plaintiff and all class members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

52.     A class action will cause an orderly and expeditious administration of the claims of the Class, and will foster economies of time, effort and expense.

53.     Plaintiff does not anticipate any difficulty in the management of this litigation.

## CLASS ACTION CLAIMS

### FIRST COUNT
### (Violations of the CFA)

54.     Plaintiff, on behalf of himself and all others similarly situated, re-asserts and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth at

length herein.

55.      Defendants are engaged in the non-consensual towing of motor vehicles in the State of
New Jersey and are therefore subject to the New Jersey Predatory Towing Prevention Act
("PTPA"), N.J.S.A. 56:13-7, *et seq.* and the New Jersey Predatory Towing Prevention Act
Regulations ("PTPA Regulations"), N.J.A.C. 13:45A-31.1 to -31.10.

56.      Plaintiff's motor vehicle was non-consensually towed not as a result of an accident.

57.      The PTPA and the PTPA Regulations apply to non-consensual tows when ordered by law
enforcement. N.J.A.C. 13:45A-31.2.

58.      The PTPA provides that:

> The director by regulation shall establish a schedule of private property and other
> non-consensual towing and related storage services for which a towing company
> may charge a service fee, and shall specify services that are ancillary to and
> included as part of basic private property or other non-consensual towing services
> for which no fees in addition to the basic towing service fee may be charged.

N.J.S.A. 56:13-14(a).

59.      The PTPA provides that:

> It shall be an unlawful practice for any private property towing company or for any
> other towing company that provides non-consensual towing services...[t]o charge
> a fee for a private property or other non-consensual towing or related storage
> service not listed on the schedule of services for which a fee may be charged as
> established by the director except as may be permitted by the director by regulation.

N.J.S.A. 56:13-16(f)(1).

60.      The PTPA Regulations provide that:

> A towing company that engages in private property towing or other non-consensual
> towing may charge fees for the following services:

> Basic tow, which shall be a flat fee;

N.J.A.C. 13:45A-31.4(a).

61.      The PTPA Regulations further provide that:

A towing company shall not charge any fee for private property towing or other nonconsensual towing and related storage services not included in (a) above.

N.J.A.C. 13:45A-31.4(e).

62.   Defendants engaged in unconscionable commercial practices, deception, fraud, false pretenses, false promises and/or false misrepresentations in violation of the CFA at N.J.S.A. 56:8-2 including, but not limited to, the following:

a.   Charging Plaintiff and all others similarly situated a fee for Labor which is not a fee permitted by the PTPA at N.J.S.A. 56:13-14(a) and therefore violates the PTPA at N.J.S.A. 56:13-16(f)(1);

b.   Charging Plaintiff and all others similarly situated a fee for Labor which is not a fee permitted by the PTPA Regulations at N.J.A.C. 13:45A-31.4(a)(2) and therefore violating the PTPA Regulations at N.J.A.C. 13:45A-31.4(e);

c.   Charging Plaintiff and all others similarly situated an "ADMINISTRATION FEE" which is not a fee permitted by the PTPA at N.J.S.A. 56:13-14(a) when a vehicle is towed not as a result of an accident and therefore violating the PTPA at N.J.S.A. 56:13-16(f)(1);

d.   Charging Plaintiff and all others similarly situated an "ADMINISTRATION FEE" which is not a fee permitted by the PTPA Regulations at N.J.A.C. 13:45A-31.4(a)(2) when a vehicle is towed not as a result of an accident and therefore violating the PTPA Regulations at N.J.A.C. 13:45A-31.4(e);

e.   Charging Plaintiff and all others similarly situated a fee for Storage which is not a fee permitted by the PTPA at N.J.S.A. 56:13-14(a) when a vehicle is towed not as a result of an accident and therefore violating the PTPA at N.J.S.A. 56:13-16(f)(1); and

    f.   Charging Plaintiff and all others similarly situated a fee for Storage which is not a fee permitted by the PTPA Regulations at <u>N.J.A.C.</u> 13:45A-31.4(a)(2) when a vehicle is towed not as a result of an accident and therefore violating the PTPA Regulations at <u>N.J.A.C.</u> 13:45A-31.4(e).

63.    The PTPA provides that, "[i]t is an unlawful practice and a violation of [CFA] to violate any provision of this act. <u>N.J.S.A.</u> 56:13-21.

64.    The PTPA Regulations provide that "[a] violation of any of the rules in this subchapter shall be considered an unlawful practice under [the CFA]". <u>N.J.A.C.</u> 13:45A-31.10.

65.    Defendants violations of the CFA at <u>N.J.S.A.</u> 56:8-2 caused Plaintiff and the putative class to suffer ascertainable losses including, but not limited to, the following:

    a.   The total fee charged for ADMINISTRATION FEE;

    b.   The total fee charged for Labor; and

    c.   The total fee charged for storage.

## SECOND COUNT
### (Violations of the TCCWNA)

66.    Plaintiff, on behalf of himself and all others similarly situated, re-asserts and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth at length herein.

67.    The Truth in Consumer Contract, Warranty, and Notice Act (TCCWNA) prohibits businesses from offering or giving written contracts or notices to consumers that contain any provision that violates consumer rights or the business' responsibilities under clearly established New Jersey or federal law. <u>N.J.S.A.</u> 56:12-15.

68.    Defendants, by towing and storing Plaintiff's vehicle, are sellers of towing services and are therefore governed by the provisions of TCCWNA.

69.     Plaintiff and all others similarly situated are consumers protected by TCCWNA.

70.     Release Invoice #320883 provided by Defendants is a notice and/or written consumer contract governed by TCCWNA.

71.     The written towing invoice that Defendants provided to Plaintiff and those similarly situated contains provisions that violate the clearly established legal rights of Plaintiff and those similarly situated and violates Defendants' responsibilities under New Jersey law, including, without limitation:

      a. Charging Plaintiff and all others similarly situated an "ADMINISTRATION FEE" which is not a fee permitted by the PTPA at N.J.S.A. 56:13-14(a) when a vehicle is towed not as a result of an accident and therefore violating the PTPA at N.J.S.A. 56:13-16(f)(1);

      b. Charging Plaintiff and all others similarly situated an "ADMINISTRATION FEE" which is not a fee permitted by the PTPA Regulations at N.J.A.C. 13:45A-31.4(a)(2) when a vehicle is towed not as a result of an accident and therefore violating the PTPA Regulations at N.J.A.C. 13:45A-31.4(e);

      c. Charging Plaintiff and all others similarly situated a fee for Labor which is not a fee permitted by the PTPA at N.J.S.A. 56:13-14(a) and therefore violates the PTPA at N.J.S.A. 56:13-16(f)(1);

      d. Charging Plaintiff and all others similarly situated a fee for Labor which is not a fee permitted by the PTPA Regulations at N.J.A.C. 13:45A-31.4(a)(2) and therefore violating the PTPA Regulations at N.J.A.C. 13:45A-31.4(e);

      e. Charging Plaintiff and all others similarly situated a fee for Storage which is not a fee permitted by the PTPA at N.J.S.A. 56:13-14(a) when a vehicle is towed not as a result

of an accident and therefore violating the PTPA at N.J.S.A. 56:13-16(f)(1);

f. Charging Plaintiff and all others similarly situated a fee for Storage which is not a fee permitted by the PTPA Regulations at N.J.A.C. 13:45A-31.4(a)(2) when a vehicle is towed not as a result of an accident and therefore violating the PTPA Regulations at N.J.A.C. 13:45A-31.4(e); and

g. Charging Plaintiff and all others similarly situated fees related to non-consensual tows and storage and providing an invoice for towing services that provided the date the vehicle was non-consensually towed without including the time at which a towed motor vehicle was delivered to a towing company's storage facility and therefore violating the PTPA Regulations at N.J.A.C. 13:45A-31.4(i).

72.   As a result of the aforementioned violations of the TCCWNA, Plaintiff and all others similarly situated are entitled to statutory damages of not less than $100 per invoice provided by Defendants, plus attorneys' fees, and costs pursuant to TCCWNA at N.J.S.A. 56:12-17.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a. Certification of a class, as defined herein, *supra*, for relief pursuant to Rule 4:32-1(b)(3) and/or -1(b)(2);

b. Appointment of Plaintiff as Class Representative and appointment of his attorneys' The Wolf Law Firm, LLC, and The Law Office of Edwyn D. Macelus, as Class Counsel;

c. A declaratory judgment that Defendants violated the Predatory Towing Prevention Act and its enacting regulations, the Consumer Fraud Act, and the Truth in Consumer Contract, Warranty and Notice Act;

d. A judgment for injunctive relief enjoining Defendants from engaging in future violations of the PTPA and its enacting regulations, the CFA, and TCCWNA;

e. A judgment for treble damages under the Consumer Fraud Act at <u>N.J.S.A.</u> 56:8-19;

f. A judgment for maximum civil penalties under the Truth-in-Consumer Contract, Warranty and Notice Act at <u>N.J.S.A.</u> 56:12-17;

g. A judgment for reasonable attorney fees and costs of suit in connection with this action, pursuant to the CFA at <u>N.J.S.A.</u> 56:8-19, TCCWNA at <u>N.J.S.A.</u> 56:12-17, and all other applicable stautes;

h. A judgment for pre-judgment and post-judgment interest; and

i. A judgment for such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of this Complaint will be mailed to the Attorney General of the State of New Jersey within ten (10) days after the filing of the Complaint with the Court, pursuant to <u>N.J.S.A.</u> 56:8-20.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to <u>Rule</u> 4:25-4, Andrew R. Wolf, Esq. is hereby designated as trial counsel for Plaintiff in the above matter.

## **CERTIFICATION**

Pursuant to Rule 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.  I further certify that I know of no party who should be joined in the action at this time.

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

Matthew S. Oorbeek, Esq.
THE WOLF LAW FIRM, LLC
1520 U.S. Hwy. 130 – Suite 101
North Brunswick, NJ  08902
*Attorneys for Plaintiff*

Dated: January 31, 2018

# EXHIBIT A

**CLASS ACTION COMPLAINT AND JURY DEMAND**

*Sean Kiley, on behalf of himself and all others similarly situated v. TUMINOS'S TOWING, INC., JOHN TUMINO, and JOHN DOES , fictitiously named individuals.*

1/10/2018                    Towing Company Jobs - About Tumino's Towing - Serving Greater NJ Area

Ridgefield Park  Teaneck  Elizabeth  Perth Amboy  Bayonne          Client Login | Call Us! **1-800-582-5313**  24/7
Westampton  North Bergen





Tumino's Towing has been in business for over 35 years. Our headquarters is located at our
Ridgefield Park facility and we have additional locations in Teaneck, Perth Amboy, Elizabeth,
Bayonne, Westampton and most recently North Bergen.

Tumino's has extensive experience in heavy towing and emergency recovery with an outstanding
safety record. We continue to invest in our fleet of tractors, trailers and all of our equipment each
year adding capacity to keep up with customer demand. We have also expanded our fleet with
specialized equipment:

- 5 Heavy duty rotators
- 2 53ft Bus Trailers
- Air-Bag Recovery System

Tumino's has branched out to provide non-road diesel fuel delivery for our customers with
machines and generators with the addition of two tanker units and a highly experienced Haz-Mat
certified staff.

Tumino's standard billing terms is payment upon completion of service and we accept all major
credit cards. We do extend credit to frequent customers and if you would like to open an account
with Tumino's please download our credit application and fax it back to us at (201) 641-8830. We

1/10/2018                    Towing Company Jobs - About Tumino's Towing - Serving Greater NJ Area

Ridgefield Park  Teaneck  Elizabeth  Perth Amboy  Bayonne        Client Login | Call Us! **1-800-582-5313**  24/7
Westampton  North Bergen



pocket.



Our entire fleet is
fully equipped with
GPS tracking. This
along with digital
communication
provides Dispatch
operators the ability
to locate and send
the right equipment to handle the job – so you can get back on the road faster.

We work closely with the local authorities and the NJ State Police in our servicing of the Turnpike
and Garden State Parkway. (See map for areas covered by Tumino's). We take pride in the fact the
local authorities know and respect our service technicians when they are on-scene. They trust
Tumino's expertise and know that the situation will be handled carefully and professionally,
helping to ensure an efficient resolution to challenging situations.

Tumino's is fully insured and carries a complete comprehensive and collision policy. We also
maintain a comprehensive liability insurance policy and garage keeper's insurance.

Tumino's also maintains Wreck Master Certification and TRAA level #3 certification by the Towing
and Recovery Association of America and most of our operators have Special Wrecker/Operator
TRAA Certification, to help ensure worry-free service from our towing professionals.

Owner and CEO John Tumino started with one tow truck in 1978 and slowly grew his towing
business by adding 2-3 trucks every year. John maintains a professional business philosophy for
both his business and with each employee, and strives to make sure each and every customer is
treated fairly and with respect. This helps to ensure that Tumino's offers the very best service.

To help ensure that employees provide the highest standard of service, John provides them with
training and only the best equipment and vehicles. Tumino's operators are trained by the best
professionals in the business and undergo continuous testing to maintain certification.

Tumino's employs over 75 full-time and 15 part-time employees. We maintain 3 shifts to ensure
complete 24 hour coverage and have additional staff on-call to accommodate overflow service

About  ⌄    Locations    Services  ⌄    Gallery    Links    Contact

1/10/2018                    Towing Company Jobs - About Tumino's Towing - Serving Greater NJ Area

Ridgefield Park  Teaneck  Elizabeth  Perth Amboy  Bayonne          Client Login │ Call Us! **1-800-582-5313**  24/7
Westampton  North Bergen

                                                              

At Tumino's Towing our mission is to provide timely towing and recovery service:

- with experienced, well trained, professional staff
- state of the art equipment
- to get any job done safely at a fair and competitive rate

If you want to be part of our mission of providing light and heavy duty towing and recovery service in and around NY and NJ, join us.

Tumino's Towing is an equal opportunity employer. We accept applications regardless of position openings.

- Dispatchers
- Flatbed Operators
- Heavy Duty Towing Operators
- Light Duty Towing Operators
- Lowboy Operators
- Mechanics

Drivers must be at least 25 years old with a clean driving record. All potential employees are subject to the following prior to hire:

- Physical exam
- Drug screen
- Background check
- DMV check

Pick up an application at the Ridgefield Park, NJ location 9am-5pm. Or download our application. Complete the form and fax it back to us at (201) 641-8830 for consideration. We'll contact you for an interview.

1/10/2018                    Towing Company Jobs - About Tumino's Towing - Serving Greater NJ Area

Ridgefield Park  Teaneck  Elizabeth  Perth Amboy  Bayonne          Client Login | Call Us! **1-800-582-5313**  24/7
Westampton  North Bergen



## GET IN TOUCH

37 Emerson Street
Ridgefield Park, NJ 07660

📞 201-931-1190

## BUSINESS HOURS:

Open 24 hours, 7 Days a
Week

## WE ACCEPT:

  

## SERVICING:

*Ridgefield Park, Teaneck,
Elizabeth, Perth Amboy,
Bayonne, Westampton,
North Bergen*

## CONNECT WITH US



## CLIENT LOGIN

Copyright © 2018 Tumino's Towing | All Rights Reserved
This site designed and hosted by Enter.Net

# EXHIBIT B

*Village of Ridgefield Park, NJ*
*Wednesday, May 24, 2017*

# Chapter 362. Towing and Storage

[HISTORY: Adopted by the Board of Commissioners of the Village of Ridgefield Park 11-10-1998 by Ord. No. 98-11 (Ch. 189 of the 1985 Code). Amendments noted where applicable.]

**GENERAL REFERENCES**
Vehicles and traffic — See Ch. **197**.

## § 362-1. Definitions.

The following terms used in this chapter shall be interpreted as follows:

**AUTOMOBILE**
  A motor vehicle of a private passenger or station-wagon-type that is owned or leased and is neither used as a public or livery conveyance for passengers nor rented to others with a driver, and a motor vehicle with a pickup body, or delivery sedan, a van, or a panel truck or a camper-type vehicle used for recreational purposes owned by an individual or by a husband and wife who are residents of the same household, not customarily used in the occupation, profession or business of the owner(s).

**BASIC TOWING SERVICE**
  The removal and transportation of an automobile from a highway, street or other public or private road, or a parking area, or from a storage facility, and other services normally incidental thereto, but does not include recovery of an automobile from a position beyond the right-of-way or berm or from being impaled upon any other object within the right-of-way or berm.

**COMMERCIAL VEHICLE**
  Any vehicle other than that as defined as an automobile pursuant to the definition contained in this section.

**INSIDE BUILDINGS**
  A vehicle storage facility that is completely indoors having one or more openings in the walls, for storage and removal of vehicles, and that is secured by a locking device on each opening.

**MOTOR VEHICLE ACCIDENT**
  An occurrence in which any vehicle, commercial vehicle or passenger vehicle comes in contact with any other object for which any vehicle, commercial vehicle or passenger vehicle must be towed or removed for placement in a storage facility. This includes all situations which are accidental as to the owner or operator of the motor vehicle even if they were caused by the intentional acts of a perpetrator where the perpetrator was not the owner or operator of the motor vehicle.

**OUTSIDE SECURED**
  An automobile storage facility that is not indoors and is secured by a fence, wall or other man-made barrier that is at least six feet high. The facility is to be lighted at night.

**OUTSIDE UNSECURED**
  An automobile storage facility that is not indoors and is not secured by a fence, wall or other man-made barrier and all other storage facilities not defined above as inside building or outside secured.

**STORAGE CHARGES FOR TWENTY-FOUR-HOUR PERIOD**
  The maximum allowable amount to be charged by a storage facility for a twenty-four-hour period or fraction thereof. A new twenty-four-hour period begins at 12:01 a.m. for each particular day of the week.

**TOW VEHICLE**

Only those vehicles equipped with a boom or booms, winches, slings, tilt beds, wheel lifts or under-reach equipment specifically designed by its manufacturer for the removal or transport of motor vehicles.

**TOW VEHICLE'S BASE OF SERVICE**

The towing operator's principal place of business where the tow vehicle is stationed when not in use.

# § 362-2. Official towers to be appointed; license required; term.

A.  The Board of Commissioners shall appoint persons or companies meeting the criteria set forth in this chapter and engaged in the business of offering the services of a motor vehicle towing or wrecker service, whereby damaged or disabled motor vehicles are towed or otherwise removed from the place where they are damaged or disabled by use of a tow vehicle, as defined in this chapter. Such persons or companies shall be known as "official towers." An approved list of official towers shall be maintained by the Village and shall consist of persons or companies who meet the requirements of this chapter. If it becomes necessary to add additional official towers to the approved list, it may be done with the approval of the Chief of Police and the Board of Commissioners.
[Amended 9-28-2010 by Ord. No. 2010-09]

B.  Official towers shall be identified by means of a license that shall be issued in accordance with the provisions of this chapter.

C.  Not less than 75 days prior to the beginning of each three-year term of official towers' licenses, the Village shall advertise for applications for towing licenses for providing towing services pursuant to this chapter. The advertisement shall be published in the official Village newspaper.

D.  All applicants shall submit their applications at least 60 days prior to the commencement date for each three-year period, and the applications shall be reviewed in accordance with the procedures set forth in this chapter. The award of a license to the successful applicants shall be subject to compliance with the license requirements of this chapter.

E.  Licenses shall be issued for a three-year period commencing on January 1 of the year in which they were issued and terminating three years thereafter, or upon such earlier date that the official tower has been determined to no longer meet the requirements of this chapter. No applicant seeking to become an official tower shall be added to the approved list prior to January 1 of the year following the year in which an application has been received and approved by the Chief of Police and the Board of Commissioners.
[Amended 10-27-2009 by Ord. No. 2009-11; 9-28-2010 by Ord. No. 2010-09]

F.  Notwithstanding the provisions of this chapter that provide for a three-year term of the license, official towers shall submit, no later than December 1 of each year that the towing license is in effect, a detailed certification certifying that the official tower meets the requirements of this chapter in regard to the issuance of licenses. The certification shall be submitted to the Chief of Police for his review and approval. Failure to submit the certification or failure to continue to abide by the requirements of this chapter in regard to the issuance of a towing license shall subject the official tower to revocation of the license in accordance with the procedures contained herein.

# § 362-3. Services to be furnished.

A.  Official towers shall furnish adequate and proper wrecking, towing, storage and emergency repair services to motor vehicles damaged or disabled within the limits of the Village when requested to do so by the Chief of Police or his authorized designee.

B.  No official tower shall subcontract any work to be performed pursuant to this chapter without first obtaining prior written approval from the Chief of Police. Any official tower to whom approval to subcontract work has been given shall remain responsible for the services performed by said subcontractor, be liable for any violations of this chapter that may be committed, and shall only subcontract such work to another official tower from the approved list.

5/24/2017                                    Village of Ridgefield Park, NJ

[Amended 9-28-2010 by Ord. No. 2010-09]

# § 362-4. Application process; inclusion on official towers' list.

A.  Applications for inclusion on the official towers' list shall be made to the Village upon a form prepared by the Chief of Police and approved by the Village Attorney and shall contain all of the following information:

  (1)  The name, residence and business address and telephone number of the owner of the towing company. If the owner is a corporation, the application shall contain the name, residence and business address and telephone number of every stockholder owning more than 10% of the issued stock and officers of the corporation.

  (2)  Such information as may be required by the Board of Commissioners concerning the personnel, vehicles, equipment and storage facilities of such applicant, as hereinafter provided, showing that the applicant meets the minimum standards of performance.

  (3)  A certificate or certificates of insurance evidencing adequate insurance coverage as hereinafter provided.

  (4)  The names and addresses of two business references who have known the applicant for at least two years.

  (5)  Certification that the applicant will be able to provide towing services anywhere in the Village with a maximum response time of 10 minutes, except when extraordinary circumstances occur.

  (6)  Certification that the applicant will be available for service or business 24 hours a day and that they will abide by the fees contained in or referred to in this chapter.

  (7)  Consent to certification that will consent to appointment of the Village Clerk as the applicant's true and lawful attorney for the purpose of acknowledging service out of any court of competent jurisdiction to be served against the applicant.

  (8)  A site plan showing the location of the storage area, the number of cars that can be stored and the total square footage area of the storage area. All storage areas shall be in a location approved by the Zoning Officer of the Village.

  (9)  Agreement to abide by the general rules and regulations established by the Chief of Police in connection with towing procedures within the Village.

B.  The applicant shall submit completed duplicate applications to the Village Clerk, who shall forward a copy to the Chief of Police for his review and approval.

  (1)  A background check to determine if either the applicant or the applicant's personnel have been convicted of a criminal offense or have had their driver's licenses suspended or revoked within the past year. Conviction of a criminal offense or suspension of a driver's license within the past year shall be a cause for disqualification from inclusion on the official towers' list.

  (2)  An inspection of the personnel, vehicles, equipment and storage area proposed to be utilized by the applicant to verify the accuracy of the information contained in the application and to determine compliance with applicable laws and regulations and the standards of performance required by this chapter.

C.  An applicant may be included on the official towers' list by the Board of Commissioners by resolution adopted at a regular public meeting when, from a consideration of the application and from such other information as may otherwise be obtained, they find that all of the following circumstances exist:

  (1)  The applicant has not knowingly and with intent to deceive made any false, misleading or fraudulent statements of material fact in the application or in any other document required pursuant to this chapter.

  (2)  The applicant has met the standards in this chapter and has furnished the required hold harmless agreement and certificate(s) of insurance.

  (3)  The application has been reviewed and approved by the Chief of Police.

   (4)  Neither the applicant nor the applicant's personnel have been convicted of a criminal offense or had their driver's license suspended within the past year.

D.   The Chief of Police shall conduct his review and render a report to the Board of Commissioners recommending either approval or denial of the application within 21 days of receipt of the application from the Village Clerk. The Board of Commissioners shall take action with regard to the application within 14 days of receipt of the report of the Chief of Police. The applicant or his representative shall be given notice of the date on which the Board of Commissioners will consider the application and shall be permitted to appear and be heard at this time.

E.   Written notice of the approval or denial of the application shall be provided to the applicant within seven days of the decision of the Board of Commissioners.

F.   If the Board of Commissioners fails to take action within 60 days of receipt of a complete application, the application shall be deemed to have been denied.

# § 362-5. Issuance of license.

A.   Upon approval of the application as herein provided and payment of the required fees, the Village Clerk shall issue the applicant an official tower's license for each tow vehicle or flatbed vehicle to be utilized in providing services pursuant to this chapter.

B.   The licenses, which shall be in a form approved by the Board of Commissioners, shall be displayed on the tow vehicle or flatbed vehicle at all times.

C.   The licenses shall be valid for the three-year period as set forth in this chapter, shall be nontransferable, and shall be subject to revocation by the Board of Commissioners for any of the following reasons:
[Amended 9-28-2010 by Ord. No. 2010-09]

   (1)  If it is subsequently determined that the applicant knowingly and with intent to deceive made false, misleading or fraudulent statements of material fact in the application or in any other documents required pursuant to this chapter.

   (2)  Committing a violation of any federal or state law or municipal ordinance or any regulation relating to the operation of a motor vehicle or the provision of towing services.

   (3)  Committing any violation of any rule or regulation promulgated by the New Jersey Department of Insurance.

   (4)  Committing any violation of any of the provisions of the New Jersey Predatory Towing Prevention Act, Chapter 39, P.L. 2009, or N.J.A.C. 13:45A-31 (Private property and Non consensual towing rules).

   (5)  Unsatisfactory service provided pursuant to this chapter.

   (6)  Failure to annually certify compliance with the requirements of this chapter, as required under § **362-2F**.

D.   The license fee for the license issued under this chapter shall be $200 per vehicle. The fee for the annual review of the certification and inspection of vehicles and equipment submitted by the official tower pursuant to § **362-2F** of this chapter shall be $100 per vehicle.
[Amended 9-28-2010 by Ord. No. 2010-09]

E.   Licenses shall not be transferable from one vehicle to another without the consent of the Chief of Police. Consent may be granted at the sole discretion of the Chief of Police if the licensee demonstrates that the transferee vehicle complies with all of the requirements of this chapter.

# § 362-6. Municipal standards of performance.

To qualify for inclusion on the list of official towers, applicants must meet the following minimum standards:

5/24/2017                                    Village of Ridgefield Park, NJ

A.  Minimum vehicle requirements.

    (1)  Every official tower shall maintain and have available to render services required by this chapter a minimum of two regular tow vehicles, one flatbed vehicle and one heavy-duty wrecker.
[Amended 9-28-2010 by Ord. No. 2010-09]

    (2)  Vehicle classes.

        (a)  Regular tow vehicles must be equipped with a boom or winch assembly mounted on the chassis, a dolly assembly, a tow sling or wheel lift assembly, and at least 100 feet of either three-eighths-inch or seven-sixteenths-inch cable attached to a motor-driven winch.

        (b)  Flatbed vehicles must be equipped with a winch or hydraulically operated bed which slides or tilts to accommodate transporting of vehicles.

    (3)  Every official tower shall have available a heavy-duty wrecker, and under reach shall be rated at 35,000 pounds and shall be capable of towing new-style buses and trucks with fiberglass front ends.

    (4)  All equipment shall comply with all state and federal regulations, and all vehicle operators shall possess a CDL license for over 18,000 pounds.

    (5)  Each applicant shall submit, along with his application, proof of ownership or lease of the vehicles which will be utilized to provide services pursuant to this chapter.

B.  Minimum equipment requirements.

    (1)  Every tow vehicle or flatbed vehicle shall be equipped with the following:

        (a)  At least one amber rotating beacon or strobe light mounted on the highest practical location of the vehicles, visible from 360° when in use and visible at a minimum distance of 500 feet during daylight hours.

        (b)  One snatch block per winch.

        (c)  Safety tow lights or magnetic tow lights for towing vehicles at night, amber colored.

        (d)  Extra chains and cable for pulling or securing a towed vehicle.

        (e)  At least one heavy-duty broom, a shovel, a crowbar or prybar, a set of jumper cables, a flashlight, one two-pound or larger fire extinguisher of dry chemical type, one dozen flares or similar warning devices for placement at the scene of an accident or behind a disabled vehicle, at least 10 pounds of dry sand or a drying compound for gasoline and oil spilled onto the roadway and a sufficient quantity and types of tools to enable the tow operator to perform proper and adequate emergency repair service for the tow.

    (2)  Every tow vehicle or flatbed vehicle shall comply with any and all state, federal and local laws, regulations and ordinances pertaining to safety, lighting and towing equipment requirements and shall be subject to inspection by the Chief of Police or his designee at any time. No changes may be made in said vehicles or equipment unless prior written approval is obtained from the Village.

    (3)  Every tow vehicle or flatbed vehicle shall display the official tower's license and shall have the name of the official tower displayed on the vehicle in such manner and of such lettering as conforms to the provisions of N.J.S.A. 39:4-46.

C.  Minimum personnel requirements. Official towers shall have available, at all times, a minimum of two persons to provide the services required by this chapter. All persons employed by official towers to provide the services required by this chapter shall meet the following requirements and be subject to the following regulations. They shall:

    (1)  Be competent mechanics able to provide minimum road service for disabled vehicles.

    (2)  Have a valid driver's license having no restrictions or conditional endorsements other than a condition requiring the wearing of eyeglasses.

5/24/2017                                   Village of Ridgefield Park, NJ

    (3)  Be mentally alert and present a neat appearance at all times.

    (4)  Obey all traffic laws and regulations.

    (5)  Be subject to inspection by the Chief of Police of the Village and shall be approved by the Chief prior to rendering any services pursuant to this chapter.

    (6)  Not have been convicted of a crime nor had their driving privileges suspended or revoked within the past year.

D.  Minimum storage requirements.

    (1)  Every official tower shall maintain an inside building or outside secured storage area meeting the following requirements:

        (a)  The storage area shall be capable of storing a minimum of 10 passenger vehicles and one tractor and trailer. The area shall have at least 800 square feet of inside storage facilities to hold and protect police hold vehicles.

        (b)  The location of the storage area shall be within the limits of the Village and in an area approved for towing by the Zoning Officer of the Village of Ridgefield Park.

        (c)  The storage area shall be fully enclosed by a sturdy fence having a minimum height of six feet, with at least one lockable gate for ingress and egress, and shall be lighted from dusk to dawn.

        (d)  The storage area shall be in an area legally zoned for such use.

        (e)  The storage area shall be available 24 hours a day, 365 days a year and shall be open to the public on weekdays during normal business hours from 7:30 a.m. to 5:30 p.m., and on Saturdays from 7:30 a.m. to 3:00 p.m. The applicant is not required to be open to the public on Sundays.
[Amended 9-28-2010 by Ord. No. 2010-09]

        (f)  The official tower shall have an employee on duty during all hours in which the storage facility is open.

        (g)  The official tower shall not charge a release fee or other charge for releasing vehicles to their owners during normal business hours.

        (h)  The official tower shall have available an area to store vehicles involved in suspected crimes or criminal activities as directed by the Chief of Police.

    (2)  The applicant shall, with his application, submit proof of ownership or lease of the storage area.

    (3)  The official tower shall be responsible for ensuring the proper and safe storage of all vehicles towed pursuant to this chapter. The official tower shall be liable for any damage incurred by such vehicles while in transit to or while stored in the storage areas.

# § 362-7. Storage facilities within Village.

No license shall be issued for a tow truck unless the tow truck business has storage facilities for towed vehicles within the Village of Ridgefield Park, New Jersey, and on premises which are zoned for this type of business. The licensee shall have an enclosed storage yard or garage in which vehicles will be stored, and said enclosure shall have a wall or fence of not less than six feet above ground level. Land used for storage of vehicles must be in an area zoned for such use. In addition, it must be in an area reasonably accessible to the public so that stored automobiles may be claimed. Visual on-site inspection of the land shall be made before the awarding of a license by a representative of the Police Department and Building Department. All of the land proposed to be utilized by the licensee for storage must be level and clear of all debris and must be clearly marked.

# § 362-8. Removal of abandoned vehicles.

A.   An "abandoned vehicle" means any vehicle so designated by an authorized representative of the Police Department. Removal is to be performed under the direction and supervision of the Police Department 24 hours a day, seven days a week, anywhere within the Village limits.

B.   All abandoned vehicles must be removed within 1/4 of an hour after receiving notification from the Police Department. The licensee may be penalized up to $100 per incident for each abandoned vehicle not removed within 1/4 of an hour of being notified. Penalties provided for in this chapter may be assessed by the Police Department in each documented situation in which the licensee failed to respond for the requested tow within 1/4 of an hour.
[Amended 9-28-2010 by Ord. No. 2010-09]

C.   The Village of Ridgefield Park shall retain the right to tow abandoned vehicles to its own land to retain any moneys realized from the sale of such vehicles.

# § 362-9. Utilization of the official towers' list.

A.   Official towers shall be placed on the official towers' list at the beginning of each three-year period in accordance with the procedures as set forth in this chapter. The official towers shall rotate on the list for one week at a time or for such a period as designated by the Chief of Police in accordance with his rulemaking authority under this chapter. Unless otherwise changed by the Chief of Police under his rulemaking authority, the one-week rotation shall commence at 12:00 midnight Wednesday and terminate at 11:59 p.m. the following Tuesday.

B.   The Village shall request wrecking, towing and storage services from each official tower in rotation. When called, the tower shall advise the dispatcher if a tow vehicle is available and the estimated time of arrival. If no tow vehicle is available or if, in the discretion of the Village official making the request, the response time is insufficient under the circumstances to protect the public health, safety or welfare or will unnecessarily delay the availability of police officers at the scene of the tow, then the next official tower on the list shall be called for that particular towing event. The official tower who is at the top of the list, however, shall remain at the top of the list for any subsequent calls until the tower's one-week period at the top of the list is completed. The same shall be applied if the notified tower does not respond in a timely manner.
[Amended 9-28-2010 by Ord. No. 2010-09]

C.   All requests for service shall be made by the Chief of Police or his official designee.

D.   The Village shall request service only from official towers; provided, however, that if no emergency or road hazard exists, the Village shall request such service from such other person as the owner of the motor vehicle in need of such services may request; and provided further that, if none of the official towers are available or able to provide such services as are requested by the Village or if an emergency exists, the Village may request such services from any other available source.

E.   During adverse weather conditions, heavy traffic conditions or emergency conditions, official towers shall give priority to requests from the Village over any other requests which may be received by the official towers.

F.   If, after notification to respond, an official tower does not arrive at the scene within 15 minutes, the next available official tower shall be dispatched to respond, and the original tower will be notified not to respond.
[Added 9-28-2010 by Ord. No. 2010-09]

# § 362-10. Hold harmless agreement.

The applicant shall agree in writing to assume the defense of and indemnify and hold harmless the Village, its elected officials, boards, commissions, officers, employees and agents from all suits, actions, damages or claims to which the Village may be subjected of any kind and nature whatsoever resulting from, caused by, arising out of or as a consequence of the provisions of towing, wrecking, storage and/or emergency services provided at the request of the Village pursuant to this chapter. Official towers shall enter into a hold harmless agreement in a form to be prepared by the Village Attorney prior to being included on the official towers' list.

## § 362-11. Insurance.

A.  No persons shall be included on the official towers' list unless and until such person has provided to the Village a certificate or certificates of insurance evidencing that there is in effect the following insurance coverages:

  (1)  Automobile liability insurance in an amount not less than $1,000,000 combined single limits.

  (2)  Workers' compensation as required by law.

  (3)  Garagekeepers' liability in an amount not less than $100,000 per location.
       [Amended 9-28-2010 by Ord. No. 2010-09]

  (4)  Garage liability in an amount not less than $1,000,000 combined single limit.

  (5)  Sufficient comprehensive general public liability insurance to protect the Village from any liability, loss or damage arising out of the activities to be conducted. Such insurance shall be in the minimum amount of $1,000,000 for each person and $3,000,000 for each accident.

B.  Policies of insurance shall contain endorsements to provide collision coverage for vehicles in tow.

C.  Policies of insurance shall be written by insurance companies authorized to do business in the State of New Jersey. Insurance companies shall be acceptable to the Village and shall have at least a B+ rating by a recognized rating service.

D.  The Village of Ridgefield Park shall be named as an additional insured on all policies of insurance provided pursuant to this chapter. All certificates of insurance shall provide that the policies may not be canceled, terminated or coverage decreased without 30 days' written notice to the Village.

E.  Policies of insurance required by this chapter shall be maintained in full force and effect at all times. In the event that any coverage is canceled, terminated, interrupted or decreased in amount, the tower shall be removed from the official towers' list until such time as the required coverage is reinstated or replaced.

## § 362-12. Towing and storage fee schedule.

A.  Fees for towing and storage of private passenger vehicles damaged in an accident, disabled on the roadway or recovered after being stolen shall not exceed those allowable by any and all New Jersey laws governing such fees.
    [Amended 9-28-2010 by Ord. No. 2010-09]

  (1)  The following is the fee schedule for towing services:

| Towing Distance | Fee |
| --- | --- |
| Within the Village | $100 |
| Each additional mile | $4 |
| Tow fee for all municipal passenger vehicles | $25 |
| Tow fee for victims of a crime | $50 |

  (2)  The following is the fee schedule for storage services:

| Type | Fee |
| --- | --- |
| Inside storage | $35 per day |
| Outside storage | $25 per day |

  (3)  In the event that the maximum fees allowable are limited by any law passed by the State of New Jersey, the aforesaid schedules shall be amended accordingly.

B.  Fees for towing and storage of private passenger vehicles, other than those damaged in an accident or recovered after being stolen, shall be the same as those set forth in Subsection **A** if the official tower is called

5/24/2017                                    Village of Ridgefield Park, NJ

to the scene by the Police Department of the Village in accordance with this chapter. Any other towing services to private passenger vehicles not involved in accidents or recovered after being stolen when requested privately by individuals shall be at the rates as agreed to between the individual and the tower.

C.  Fees for all other types of vehicles, other than private passenger vehicles pursuant to Subsections **A** and **B** of this section, shall be determined in accordance with this subsection.
[Amended 9-28-2010 by Ord. No. 2010-09]

(1)  The following is the fee schedule for towing services for other than private passenger vehicles:

| | Fee | |
| --- | --- | --- |
| **Type of Towing Service** | **Class 1 (all vehicles 6,000 to 16,000 pounds' gross vehicle weight)** | **Class 2 (all vehicles 16,000 to 80,000 pounds' gross vehicle weight)** |
| Standard tow | $200 | $300 |
| Flatbed | $225 | $325 |

(2)  The following is the fee schedule for storage services:

| | Fee | | |
| --- | --- | --- | --- |
| **Storage Facility** | **Class 1** | **Class 2** | **Tractor Trailer** |
| Inside building | $50 per day | $100 per day | $140 per day |
| Outside building | $50 per day | $100 per day | $140 per day |

(3)  Fees set forth for nonpassenger vehicles in this section are the maximum charges that shall apply for basic towing services. The official tower, however, shall be allowed for winching and wrecking services over and above the basic towing services in this section.

(4)  The following is the schedule for allowable fees:

| **Type** | **Fee** |
| --- | --- |
| **Emergency Road Service** | $60 (includes up to 2 gallons of gas) (If a tow results, there will be no charge for road service except for cost of gas supplied.) |
| **Vehicle Recovery** | |
| Winching under 6,000 pounds | $75 (vehicle did not roll over) |
| Off road recovery or up-righting of vehicle | $150 per hour |
| Medium duty 6,000 to 16,000 pounds | $250 per hour |
| Heavy duty over 16,000 pounds | $425 per hour |
| Crane service | $600 per hour |
| Air cushion device | $275 per hour |
| Axle/driveshaft removal | $45 |
| Hookup air | $25 |
| Crash wrap (windows are broken or will not close) | $25 per side window; $40 per front/rear window |
| Administrative fee (includes but is not limited to accompanying insurance adjuster, photographs and inventory reports) | $35 after 3 incidents |
| **Clean-Up Fees** | |
| Clean up excessive debris | $35 |
| Speedy dry | $30 first bag; $12 each additional bag |
| Extra personnel | $75 per hour per person |
| Level 3 supervisor | $90 per hour |

5/24/2017                                          Village of Ridgefield Park, NJ

| Type | Fee |
|------|-----|
| Show up fee (service is refused) | $50 |
| Additional tow vehicles required | At normal truck rate |

D. The fees set forth in Subsections **A** and **B** of this section for towing rates are the maximum charges that shall apply to a private passenger automobile for basic towing services. There shall be no additional charges other than those provided herein, including but not limited to flat-bedding, waiting time, minor cleanup and additional labor, when only basic towing services, as defined, are provided. The official towers, however, shall be allowed to charge for services other than basic towing services as defined in this section. The allowable fees for private passenger vehicles when services above and beyond a standard tow are provided are as follows: [Amended 9-28-2010 by Ord. No. 2010-09]

| Type | Fee |
|------|-----|
| **Emergency Road Service** | $60 (includes up to 2 gallons of gas) (If a tow results, there will be no charge for road service except for cost of gas supplied.) |
| **Vehicle Recovery** | |
| Winching under 6,000 pounds | $75 (vehicle did not roll over) |
| Off road recovery or up-righting of vehicle | $150 per hour |
| Crash wrap (windows are broken or will not close) | $25 per side window; $40 per front/rear window |
| Administrative fee (includes but is not limited to accompanying insurance adjuster, photographs and inventory reports) | $35 after 3 incidents |
| **Clean-Up Fees** | |
| Clean up excessive debris | $35 |
| Speedy dry | $30 first bag; $12 each additional bag |
| Extra personnel | $75 per hour per person |
| Level 3 supervisor | $90 per hour |
| Show up fee (service is refused) | $50 |
| Additional tow vehicles required | At normal truck rate |

(1) Other than for commercial vehicles, the towing rates shall be calculated based on the total distance traveled from the tow vehicle's base of service to the job site and return, by way of the shortest available route. Fractions shall be rounded up to the nearest whole mile.

(2) Tow vehicles transporting multiple passenger cars at one time shall receive the applicable fees for each vehicle transported.

E. The fees set forth on the schedule for storage fees are the maximum storage charges per twenty-four-hour period that shall apply to a private passenger automobile that is stored by a person.

# § 362-13. Miscellaneous provisions.

A. Copies of this chapter and the schedule of fees that may be charged by official towers shall be made available to the public during normal business hours at the Village Municipal Building. Copies shall also be made available to the public at each official tower's place of business.

B. All official towers shall post, in a prominent place at each storage area clearly visible to the public, a schedule of the fees that may be charged for all services provided pursuant to this chapter.

C. The Village reserves the right to make periodic unannounced inspections of the personnel, vehicles, equipment and storage areas of all official towers.

D.    The relationship between an official tower and the Village is one of an independent contractor. Neither party shall be construed in any manner whatsoever to be an employee of the other, nor shall any employee or agent furnished by any party be construed to be an employee or agent of the other party. Inclusion on the official towers' list shall not be construed or considered as a joint venture, partnership, association, contract of employment or profit-sharing agreement.

E.    The municipality shall not be liable or responsible for compensating the official towers for any of the services performed under this chapter unless those services are performed for the Village vehicles. Compensation shall be the responsibility of the owner of the towed motor vehicle, and the official tower shall proceed directly against the owner.

F.    The official tower shall, at all times, be solely responsible for the conduct of its employees.

G.    Each official tower shall keep and maintain adequate and complete records showing all vehicles towed, stored and released, all services rendered and all fees charged and collected. All records shall be available for inspection by the Village at any time during normal business hours. Records shall be kept and maintained by the official tower at one central location and shall be retained for a period of seven years. Records may be written, printed or computerized as long as the requirements of this subsection are met.

## § 362-14. Dispute resolution and license revocation.

A.    In the event that a complaint is received by the Village involving the improper or unsatisfactory performance of services by an official tower, excessive charges or damage to a motor vehicle while in custody of the tower, written notice of same shall be provided by the Village Administrator to the official tower involved. The tower shall have the opportunity to respond, in writing, within five days.

B.    Within 14 days of receipt of the tower's response, or within 21 days of receipt of the complaint, if no response is received, the matter shall be presented by the Village Clerk to the Board of Commissioners.

C.    The Board of Commissioners shall consider the matter at a regular public meeting and may request that the complainant and the tower involved appear and give testimony regarding the complaint.

D.    If after considering the matter the Board of Commissioners shall determine that one of the causes for revocation of the official tower's license, as set forth in § 362-5C, exists, the license shall be revoked and the tower shall surrender same to the Village Clerk within one day.

E.    Failure to surrender the license upon revocation shall constitute a violation of this chapter.

F.    Nothing contained herein shall prevent or limit the right of any person to commence or maintain an action for damages or any other relief directly against an official tower in a court of competent jurisdiction.

## § 362-15. Violations and penalties.

A.    Any person who shall violate any of the provisions of this chapter shall, upon conviction, be punished as provided in Chapter 1, General Provisions, Article II, General Penalty.
[Amended 10-27-2009 by Ord. No. 09-11]

B.    In addition to the penalty provided above, a violation of any of the provisions of this chapter shall be cause for revocation of the official tower's license.



**CLASS ACTION COMPLAINT AND JURY DEMAND**

*Sean Kiley, on behalf of himself and all others similarly situated v. TUMINOS'S TOWING, INC., JOHN TUMINO, and JOHN DOES , fictitiously named individuals.*



# EXHIBIT D

**CLASS ACTION COMPLAINT AND JURY DEMAND**

*Sean Kiley, on behalf of himself and all others similarly situated v.  TUMINOS'S TOWING, INC., JOHN*
*TUMINO, and JOHN DOES , fictitiously named individuals.*

eunkyong.lee 9:42:58 Tuesday, March 07, 2017

```
RIDGEFIELD PARK          NJ AUTOMATED TRAFFIC SYSTEM          03/07/17
TFF00161                      GENERAL INQUIRY                    09:42
COURT: 0250  RIDGEFIELD PARK        TICKET NO: RP 179415   STATUS: DISP
VIOLATION: 197-25        DESIGNATED SNOW EMERGENCY-NO PARKING AREA
VIOLATION DATE: 02/15/2014   65 MPH: N CONST ZONE: N PERS INJ: N CRT AP REQ: N
ISSUED DATE: 02/15/2014 ISSUED BY: 02500129 TIME: 01:04 A PAYABLE: Y SAF COR: N
                                   MUN OF OFFENSE: 0250
DEFT NAME: SEAN    M KILEY              DL:              2            NJ
ADDRESS 1:                             DOB:           SEX M EYE 2 RC:
ADDRESS 2:                             PHONE:
CITY:                                  PLATE:  V90DEY   NJ   COMM LIC:
                                       VEH:  0000      HOND BODY: 02
          *** ASSESSED ***   *** PAID ***    *** COURT INFORMATION ***
FINE:        21.00            21.00    DATE: 05/07/2014  04:00 P    PLEA: 1
COST:        29.00            29.00      *** DEFENDANT FOLLOW-UP ***
MISC:         2.00             2.00    FTA: 04/09/2014  WARRANT:
                                       PSUS: 00/00/0000  RECALL:
TOTAL:       52.00            52.00 R/DSUS:             BAIL SET:
PRINTER ID:              F17: PRINT  BAIL POSTED:       BAIL STATUS:

DISPOSITION: FINDING:    DATE:        SENT 1:        2:
CASE NOTES:
F1: MORE DATA   F2: DISP   F3: BAIL   F4: INV PERS   F5: EVENTS   F6: TPAY
F7: PYMTS   F8: WARRANT   F9: NOTES   F10: SAVED LIST   F13: D/L   F14: PLATE
```

# EXHIBIT E

CLASS ACTION COMPLAINT AND JURY DEMAND

*Sean Kiley, on behalf of himself and all others similarly situated v.  TUMINOS'S TOWING, INC., JOHN TUMINO, and JOHN DOES , fictitiously named individuals.*

# Release Invoice

 

| Invoice # | Date | Call # |
|---|---|---|
| 320883 | 15-Feb-2014 | / |

37 Emerson Street
Ridgefield Park, New Jersey   07660
Phone: (201) 931-1190
Fax: (201) 641-8830

**Customer**

COD
RIDGEFIELD PARK POLICE
New Jersey
New Jersey

**Summary**

| | |
|---|---|
| **Location:** | 170 Chirstie |
| **Destination:** | TSC |
| **Reason:** | Imp |
| **Zone:** | |
| **Vehicle:** | 2010 Honda Accord EX  (Silver) |
| **Owner:** | |
| **VIN:** | redacted |
| **Plate/Tag:** | **Truck:** FB-105 |
| **Mileage:** | **Driver:** 8 |

**Terms:** COD

| Date | Incident # | Club/PO # | Service | Quantity | Rate | Amount |
|---|---|---|---|---|---|---|
| 15-Feb-2014 | | | | | | |
| | | | ADMINSTRATION FEE | 1.00 | 35.00 | 35.00 |
| | | | IMPOUND | 1.00 | 100.00 | 100.00 |
| | | | Labor | 1.00 | 100.00 | 100.00 |
| | | | Storage (1 Day) | | | 25.00 |

**Locations:**
**Corporate Office:37 Emerson St,Ridgefield Park,NJ (201) 931-1190**
**900 Julia ST,Elizabeth,NJ (908) 351-1450**
**Perth Amboy,NJ (201) 931-1194**
**Westampton,NJ (609) 267-5555**
**Bayonne,NJ (201) 386-1110**
**Teaneck,NJ (201) 947-7600**

**Paid By:  Visa**

| | |
|---|---|
| **Sub Total** | **260.00** |
| Tax (7.00%) | 8.75 |
| **TOTAL** | **268.75** |
| Payments | (268.75) |
| **Balance Owing** | **0.00** |

Date Towed:      15-Feb-2014
Date Released:   15-Feb-2014  9:15 AM

Released To: SEA KILEY
Verification:  redacted

I, the undersigned, do hereby certify that I am legally authorized to take possession of the vehicle referenced above.
I have received the vehicle in satisfactory condition.

_____
Signature

_____
Date

This company is not responsible for loss or damages caused by faulty tires, bumper brackets, etc. and assumes no responsibility for loss or damage by
theft, fire or any other cause beyond our control, to any vehicle placed with us for storage or repair.

# Civil Case Information Statement

## Case Details: UNION | Civil Part Docket# L-000399-18

**Case Caption:** KILEY SEAN  VS TUMINO'S TOWING, INC .

**Case Initiation Date:** 01/31/2018

**Attorney Name:** MATTHEW S OORBEEK

**Firm Name:** THE WOLF LAW FIRM LLC

**Address:** 1520 US HWY 130 SUITE 101

NORTH BRUNSWICK NJ 08902

**Phone:**

**Name of Party:** PLAINTIFF : KILEY, SEAN

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** COMPLEX COMMERCIAL

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Hurricane Sandy related?** NO

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

---

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

This is a putative class action raising consumer protection claims. Single-judge case management and expanded discovery are appropriate because of the inherent complexity involved in determining class certification, effectuating class notice, and managing and adjudicating the matter on a class wide basis. Although this case has been designated as 508 "Complex Commercial," it is not appropriate for the Complex Business Litigation Program because it is a consumer protection case.

**Do you or your client need any disability accommodations?** NO

**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

**If yes, for what language:**

---

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

01/31/2018
Dated

/s/ MATTHEW S OORBEEK
Signed